Jeremy WILLIAMS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2005–CA–001531–MR.

Court of Appeals of Kentucky.

Aug. 31, 2007.

Angela Johnson, Erin Yang Hoffman, Assistant Public Advocate, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General, Todd D. Ferguson, Assistant Attorney General, Frankfort, KY, for appellee.

Before LAMBERT, MOORE, and NICKELL, Judges.

## OPINION

NICKELL, Judge.

Jeremy Williams (hereinafter "Williams") appeals the judgment entered by the Hardin Circuit Court on July 11, 2005, sentencing him to a total of five years in prison for the crime of sexual abuse in the first degree [1] and being a persistent felony offender in the second degree (PFO II).[2] Due to a lack of preservation of error, we hold the trial court did not err in finding Williams voluntarily pled guilty and properly exercised its discretion in overruling Williams' motion to withdraw his guilty plea. We therefore affirm.

On May 31, 2004, while on probation for felonies committed in 1999, Williams knocked on a woman's door in Hardin County. When she opened the door, Williams reached inside and grabbed her breast. As a result, on August 31, 2004, Williams was indicted for sexual abuse in the first degree [3] and for being a PFO II. With assistance of counsel, he pled not guilty during arraignment on September 21, 2004, and a jury trial date was set for March 9, 2005.

According to trial counsel, Williams did not want to go to trial.[4] Still, counsel prepared the case as if it would be tried by a jury. In anticipation of trial, Williams underwent a criminal responsibility evaluation [5] and a discovery order was entered. Counsel discussed with Williams the charges, how his actions satisfied the statutory elements of the offense, the potential defenses, the sentencing implications of having committed this latest act while on felony probation, and being a PFO. At the last minute, Williams decided to plead guilty.

1. Kentucky Revised Statutes (KRS) 510.110.

2. KRS 532.080(2).

3. Although not mentioned by either party, the indictment lists the substantive charge as "First–Degree Sexual Abuse; a Class 'D' Felony" and cites the relevant statutory authority as KRS 510.110. The description of this count reads in full: "That on or about the 31st day of May, 2004, in Hardin County, Kentucky, the above named Defendant committed the offense of First–Degree Sexual Abuse when he subjected 'T.M.', to sexual contact." We mention this because the description appears more consistent with sexual abuse in the *third* degree, a Class B misdemeanor defined in KRS 510.130 and requiring proof that another person was subjected "to sexual contact without the latter's consent," than it is with sexual abuse in the *first* degree which requires proof of "sexual contact by forcible compulsion[.]" Nevertheless, an indictment must be read as a whole so as to fairly apprise the accused of the crime against which he is defending. *Cavitt v. Commonwealth*, 397 S.W.2d 54 (Ky.1965). Here, any potential for confusion over the crime charged was erased by including the name of the crime, its classification as a Class D felony, and the statutory reference in the indictment. Furthermore, any defect in the indictment, other than a claim that "it fails to show jurisdiction in the court or to charge an offense," is waived if not raised by pretrial motion. Kentucky Rules of Criminal Procedure (RCr) 8.18. No motion was made here so we will not address it further.

4. Hon. Nancy Bowman–Denton represented Williams at arraignment, during the guilty plea hearing and at final sentencing. Another attorney, Hon. Angela Johnson, filed appellate briefs on Williams' behalf in this Court. We note a conflict in the positions taken by the attorneys. Hon. Bowman–Denton stated during the sentencing hearing that she prepared the case as if it would be tried by a jury even though Williams did not want to go to trial. In contrast, Johnson has stated in the brief on appeal that Williams wanted to go to trial.

5. KRS 504.020 and 504.100 require mental evaluation when a criminal defendant's mental state is questionable.

On March 22, 2005, Williams appeared in open court with counsel. The court began the guilty plea colloquy by reading aloud the charges listed in the indictment. The court inquired whether Williams had discussed the charges with his attorney as well as the potential penalties, defense options and the impact of having committed the crimes while on probation. Williams confirmed he had fully discussed each item with counsel, he was satisfied with counsel's advice, and he understood the meaning of pleading guilty. When the trial court asked how he plead to the charges of sexual abuse in the first degree and being a PFO in the second degree, Williams briefly conferred with counsel about the PFO charge. The court then explained to Williams that the PFO charge is not a separate crime, but it would increase the penalty for the sex abuse charge listed in the indictment. Importantly, Williams asked nothing about the sexual abuse charge. Thereafter, Williams stated he was pleading guilty.

The court then explained to Williams the rights he would waive by pleading guilty. The court also told Williams that if he had any questions, either counsel or the court would answer them. Thereafter, the trial court stated that by pleading guilty, Williams was waiving his constitutional right to a trial by jury at which the Commonwealth would have to prove him guilty beyond a reasonable doubt; the ability to question witnesses and to subpoena witnesses on his behalf; and the right to remain silent and not incriminate himself. Williams acknowledged he was giving up these rights. Through further inquiry, the court established Williams was not under the influence of drugs, alcohol or medication; he had never been told he had a mental disease or defect; he was not coerced or threatened into pleading guilty;

and he had no difficulty reading or understanding the English language.

Next, the trial court directed Williams' attention to the motion to enter guilty plea form and particularly to the area on the form listing the rights that are waived by entering a guilty plea. The court explained to Williams that by signing the form and initialing the section in boldface type that he was telling the court he was waiving each of these rights. When both counsel and the court asked Williams whether he had any questions, Williams replied, "No." Williams then initialed and signed the form in open court. When the trial court asked him whether he had any questions about the form he had just signed, Williams responded, "No, Your Honor." Included in the form signed by Williams is the statement, "Because I am guilty and make no claim of innocence, I wish to plead 'GUILTY' in reliance on the attached 'Commonwealth's Offer on a Plea of Guilty.'"

The court then turned its attention to the Commonwealth's offer on a guilty plea in which the Commonwealth agreed to recommend Williams serve five years on the charge of sexual abuse in the first degree which was enhanced because of his status as a PFO II. The offer was conditioned on Williams stipulating his probation on two 1999 felony cases [6] would be revoked. Williams signed the offer in open court. The court then confirmed verbally with Williams that the Commonwealth's offer was just as the court had stated it to be; that Williams accepted the Commonwealth's offer; and that no one had made any statements, promises, or representations to him that differed from the Commonwealth's written offer.

The court then asked Williams whether he was entering the guilty plea of "your

6.  99–CR–417 and 99–CR–419.

own free will and because you believe it's in your best interest to do it," to which Williams responded, "Yes." When asked, the attorney representing Williams stated she agreed with the plea and had no reason to challenge the responses Williams had given to the court. Thereafter, Williams told the court he was satisfied with counsel's services and advice and believed she had negotiated for him the best deal possible.[7]

After reminding Williams he was still under oath, this exchange occurred:

COURT: How do you plead to the charge of first degree sexual abuse and being a second degree PFO?

WILLIAMS: Guilty.

COURT: Are you pleading guilty to that because you are guilty of it?

WILLIAMS: I guess.

COURT: Well, you said, "You guess." Let me just ask it to you differently. OK. There's somebody whose initials was in here, on this indictment, "T.M." Did you have some type of contact with that person. . . .

WILLIAMS: Yes, Sir.

COURT: . . . that you shouldn't have had?

WILLIAMS: Yes, Your Honor.

COURT: And you did have a prior felony conviction before, right?

WILLIAMS: Yes, Sir.

Thereafter, the trial court found Williams was entering a guilty plea knowingly, intelligently and voluntarily and counsel had provided competent representation with which Williams was satisfied. The court then accepted the plea and found Williams guilty of sexual abuse in the first degree and being a PFO II. The court also accepted the stipulation regarding probation revocation and scheduled a sentencing hearing for May 17, 2005.

The court explained to Williams that at the sentencing hearing he and his attorney could present information to the court and propose corrections to the sex offender treatment evaluation and the pre-sentence investigation report. The court further explained to Williams that he would be permitted to withdraw his plea during the sentencing hearing if the trial court rejected the guilty plea and the plea agreement. If, however, the court accepted the guilty plea, the court would then decide and impose a sentence.

On May 4, 2005, between pleading guilty and being sentenced, Williams sent a handwritten letter to the trial court asking that he be allowed to withdraw his guilty plea. He wanted to withdraw the guilty plea because, "[a]t the time my attorney Nancy Bowman–Denton told me I really don't have a choice but to take the plea agreement because I wasn't going to win the case if I took it to trial."

On May 17, 2005, the trial court convened the sentencing hearing with both Williams and his attorney present.[8] The

---

7. Sexual abuse in the first degree is a Class D felony in Kentucky. KRS 510.110(2). The penalty range for a Class D felony in Kentucky is one to five years. KRS 532.020(1)(a). Because Williams had a prior felony conviction, he was also charged as a PFO II. KRS 532.080(2). As such any penalty imposed on the underlying sex crime would be enhanced to the "next highest degree than the offense for which convicted." KRS 532.080(5). In this case, Williams' punishment would have been enhanced to a Class C felony which carries a penalty of five to ten years. KRS 532.020(1)(b). Thus, five years, the deal counsel negotiated with the Commonwealth, is the minimum sentence Williams could have received for the crimes charged if convicted by a jury.

8. Two unrelated items were discussed at the beginning of the sentencing hearing. The first, proper calculation of Williams' jail credit, was quickly resolved by counsel. The sec-

trial court asked Williams whether he remembered the court questioning him at length before accepting his guilty plea in March 2005. Williams said he did. The court then asked Williams whether there was something about the plea process on that day that made him now believe his guilty plea was involuntary. Williams replied:

> WILLIAMS: I feel like I had no choice. It seemed like either way ... you know.... I had no choice, but to take it, that's the way I felt.
>
> COURT: OK, anything else that you want to tell me about that?
>
> WILIAMS: I just don't feel that I should have been charged with the charges, you know, when there are other people who do worse things and they are still getting charged with the same thing I'm getting charged with.

At that point, counsel stated to the court that she had thoroughly explained to Williams the sexual abuse in the first degree charge and how it satisfied the elements of the statute. She also stated she had discussed with Williams his limited options; he could either go to trial or he could plead guilty. According to counsel, Williams did not want to go to trial. Counsel believed entry of the guilty plea was Williams' best option since it represented the shortest sentence he could receive for the crime charged in light of the fact that he was on felony probation when he committed the offense and his sentence would be enhanced because he qualified as a PFO II.

The trial court recalled that during the guilty plea colloquy he specifically asked Williams, several times and in a variety of ways, whether he had fully discussed the charges with his attorney as well as any potential penalties, defenses, and options, including the option of going to trial. Each time Williams had responded affirmatively. The court went on to note that while going to trial is an option, doing so would not have guaranteed a shorter sentence. Ultimately, the trial court overruled the request to withdraw the guilty plea stating he had previously found the plea to have been entered knowingly, voluntarily and intelligently on March 22, 2005, and nothing he had heard or seen since that time had convinced him otherwise. Thereafter, the trial court sentenced Williams to serve an enhanced term of five years in conformity with the Commonwealth's offer.[9] This appeal followed.

Williams contends the trial court abused its discretion in overruling the request to withdraw his guilty plea. On appeal he claims the trial court did not explain or describe to him in sufficient detail the type of contact prohibited by KRS 510.110 and he never actually admitted he was guilty of sexual abuse in the first degree. The Commonwealth responds that Williams' guilty plea, in light of all the evidence, was entered voluntarily, understandingly, and

ond, a request by Williams for psychiatric treatment for a possible personality disorder, was overruled by the trial court because there was no evidence of incompetency in the record. Williams underwent psychiatric evaluation for criminal responsibility prior to entering his guilty plea.

9. The judgment and order imposing sentence reads in pertinent part, "**IT IS ADJUDGED BY THE COURT** that the Defendant is guilty of the following crime(s): **First–Degree Sexu-** al **Abuse (PFO 2nd),** and is **Sentenced** to **Five (5) years, to serve,** under the Department of Corrections, to run consecutively with any other sentence the Defendant may have or receive from any other court proceeding, in this jurisdiction, or any other, conditioned upon the Defendant stipulating to revocation on cases 99–CR–00417 and 99–CR–00419 ...." (emphasis in original). No sentence was imposed on the underlying offense of sexual abuse in the first degree.

intelligently. We agree with the Commonwealth.

■ We first address whether this issue is preserved for our review. Rules of Criminal Procedure (RCr) 9.22 requires that a party, when a court rules or acts, advise the court of:

> the action which that party desires the court to take or any objection to the action of the court, and on the request of the court, the grounds therefor; and if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice that party.

On appeal, counsel argues this issue was preserved by the letter Williams sent to the trial court asking that he be allowed to withdraw his guilty plea. We disagree.

While it is true that Williams sent a letter to the court, the reasons given in that letter for wanting to withdraw the plea had nothing to do with confusion over the crime to which he had pled guilty or whether the trial court had established a factual basis for the plea. Williams wrote that he felt he had no choice but to plead guilty because his attorney had told him he would lose if he went to trial. Similarly, at sentencing, when the trial court asked Williams to explain why he wanted to withdraw his guilty plea he voiced two reasons, but neither was related to his current allegation. The first was that he felt he had no choice but to plead guilty and the second was that he felt it was unfair for him to be charged with this particular crime when others who commit far worse behavior are charged with the same crime. Neither Williams' letter nor his verbal request suggested to the trial court that his guilty plea was involuntary because he was confused about the crime to which he was admitting guilt or that the trial court had failed to establish a factual basis for the plea.

■ We review only those claims that are preserved by proper objection, *Sherley v. Commonwealth,* 889 S.W.2d 794, 796 (Ky.1994), and only when the trial court is given the opportunity to rule on the alleged error. *Hunter v. Commonwealth,* 560 S.W.2d 808, 809 (Ky.1977); *Farmer v. Commonwealth,* 6 S.W.3d 144, 147 (Ky. App.1999). Because the theory of error being advanced on appeal was never argued to the trial court, it is not preserved for our review and we will not address it now. As held in *Kennedy v. Commonwealth,* 544 S.W.2d 219, 222 (Ky.1976), an appellant is "not ... permitted to feed one can of worms to the trial judge and another to the appellate court."

■ Withdrawal of a voluntarily entered guilty plea is within the trial court's discretion. RCr 8.10. When we consider the totality of the circumstances, as required by *Kotas v. Commonwealth,* 565 S.W.2d 445, 447 (Ky.1978), we see a convicted felon who was indicted for a crime while on felony probation. He was represented by counsel with whom he stated he was satisfied. In addition to explaining the charges, penalties and potential defenses to Williams, counsel also discussed with him his options. He could go to trial or he could plead guilty. After weighing his limited options, Williams chose to enter a guilty plea. He signed documents in open court expressing his intention to plead guilty; he knowingly waived his constitutional rights; and when asked, he told the court he had no questions. Included in the motion to enter a guilty plea was the statement, "Because I am guilty and make no claim of innocence, I wish to plead "GUILTY".... Thereafter, the trial court accepted Williams" guilty plea and found it to be knowingly entered. As the date for final sentencing neared, Williams changed his mind and asked the court to allow him

to withdraw his guilty plea. However, neither of the reasons he gave (my attorney told me I'd lose if I went to trial and others do far worse things and are charged with the same crime) persuaded the trial court that Williams' previously entered guilty plea was entered involuntarily. Based upon the totality of the circumstances, we cannot say the trial court committed clear error in finding Williams' guilty plea to have been validly entered or that the trial court abused its discretion in overruling the motion to withdraw the guilty plea. For the foregoing reasons, the judgment of the Hardin Circuit Court is affirmed.

ALL CONCUR.