# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: AUGUST 24, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0330-MR

ZACHARIAH MINIX                                              APPELLANT

ON APPEAL FROM ADAIR CIRCUIT COURT
V.                 HONORABLE JUDY VANCE MURPHY, JUDGE
NO. 20-CR-00165

COMMONWEALTH OF KENTUCKY                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Zachariah Minix (Minix) pled guilty to one count each of kidnapping, second-degree unlawful transaction with a minor, second-degree rape, possession or viewing of materials portraying a sexual performance by a minor, and possession of marijuana. Before sentencing, Minix moved to withdraw his guilty plea, and the circuit court denied the motion. He now appeals the circuit court's ruling as a matter of right.[1] After review, we find no error occurred in the trial court's ruling and affirm.

---

[1] Ky. Const. § 110.

# I.    FACTS AND PROCEDURAL BACKGROUND

On August 18, 2020, Minix and another man, Ethan Harville (Harville) took the thirteen-year-old victim in this case, Jane,[2] from Colorado and intended to take her to Tennessee, Minix's state of residence.  Both Minix and Harville were twenty-one years old at the time of the offenses herein.  Because this case was disposed of pursuant to a guilty plea, the facts surrounding the kidnapping were not fully developed in the record before us.  But we discern that Minix met the victim through the internet, and that she initially told him she was older than she was.  However, at some point while en route from Colorado to Tennessee, Minix was informed over the phone by both Jane's father and Colorado law enforcement that she was in fact thirteen.  Minix did not return Jane upon learning this, and instead continued toward Tennessee.  At some point during that trip, Minix threw Jane's phone out of the car.

Three days after Jane was taken investigators were able to locate her using cell phone data, presumably from Minix's phone.  They narrowed the location down to a room at a Sleep Inn Hotel in Adair County, Kentucky.  Minix and Harville refused to open the door when officers attempted to gain entry to the room, and the officers ultimately had to use a key card obtained through the hotel's staff to enter.  Jane was found in the room, and she later informed the officers that Minix had raped her the day prior while she was trying to take a shower.

---

[2] As the victim is a minor, this opinion will use a pseudonym to protect her privacy.

On November 5, 2020, Minix was indicted by a grand jury for one count each of kidnapping, first-degree unlawful transaction with a minor, first-degree rape, possession or viewing of matter portraying a sexual performance by a minor, and possession of marijuana.

Both federal law enforcement and several state law enforcement agencies were involved in this case. As such, the evidence submitted in discovery was extensive and several pre-trial hearing dates and trial dates were set and then subsequently extended. It appears that defense counsel and the Commonwealth were actively negotiating a plea deal from at least March 2021 to December 2021. During a hearing on January 25, 2022, defense counsel informed the court that the defense had received an offer for a plea deal from the Commonwealth that Minix was interested in, but Minix still had questions that counsel was trying to get answers for regarding wait times for the sex offender treatment program due to COVID-19. The defense requested a few more days for Minix to decide. Three days later, on January 28, defense counsel reported that Minix and his family had differing views on the Commonwealth's offer and Minix still had not decided. The Commonwealth and defense counsel agreed that March 29, 2022, would be the cut off date for Minix to either accept or reject the Commonwealth's plea offer.

On March 29, Minix and his counsel agreed to and signed the Commonwealth's plea agreement. Under the terms of the agreement, the Commonwealth amended Minix's charge of first-degree unlawful transaction with a minor to second-degree unlawful transaction with a minor. This

3

downgraded that charge from a Class B felony, punishable by imprisonment for 10-20 years, to a Class D felony, punishable by imprisonment for 1-5 years. The Commonwealth further agreed to amend the charge of first-degree rape to second-degree rape. This downgraded the charge from a Class B felony, punishable by imprisonment for 10-20 years, to a Class C felony punishable by imprisonment for 5-10 years. Amending both charges in this manner also meant that Minix would not be considered a "violent offender" pursuant to KRS[3] 439.3401(1)(i) and KRS 439.3401(1)(f), respectively. He therefore would not have to serve 85% of his sentence before attaining eligibility for parole.[4]

Under the plea agreement, the Commonwealth recommended the following sentences: fifteen years for kidnapping, five years for second-degree unlawful transaction with a minor, ten years for second-degree rape, five years for possession or viewing a matter portraying a sexual performance by a minor, and thirty days for possession of marijuana. All charges except the kidnapping charge would run concurrently for a total of ten years, and that ten-year sentence would run consecutively with the fifteen-year sentence for kidnapping for a total of twenty-five years. Of note, the plea agreement also required Minix to "[acknowledge] that he will be deemed to be a 'sexual offender,'" and that "he will be subject to lifetime registration on the sex offender registry."

---

[3] Kentucky Revised Statute.

[4] KRS 439.3401(3)(a) ("A violent offender who has been convicted of a . . . Class B felony shall not be released on probation or parole until he has served at least eighty-five percent (85%) of the sentence imposed.").

On the same date, March 29, the defense filed a motion to enter a guilty plea, and the circuit court held a standard *Boykin*[5] plea colloquy on the motion. During the colloquy, Minix agreed that he had sufficient time to review the plea agreement with his attorney, and that he was satisfied with the services rendered by his attorney. He stated that he did not have any questions for the court or his attorney regarding the plea agreement. In addition, he understood the constitutional rights he was waiving by entering the guilty plea, including: his right not to testify against himself, his right to a speedy and public trial by jury, his right to confront and cross-examine witnesses, and his right to appeal. Defense counsel stated that he had gone over the plea agreement with Minix and that the plea was consistent with his advice. The court and Minix then had the following exchange:

**Court:** Are you pleading guilty because you are guilty?

**Minix:** Yes, your honor.

**Court:** Is your plea of guilty being made freely, knowingly, intelligently, and voluntarily?

**Minix:** Yes, your honor.

Minix entered a guilty plea to every count of the indictment against him, which were stated individually by the court. The court accepted Minix's guilty plea, finding it was made freely, knowingly, voluntarily, and intelligently. Sentencing

---

[5] *See Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (holding that due process requires that a trial court must make an affirmative showing on the record that a guilty plea is voluntary and intelligent before it may be accepted).

was initially scheduled for May 10, 2022, but was later continued to June 28, 2022.

Before discussing the events of the sentencing hearing, we note for context that in accordance with Minix's sex crime convictions, he was classified as a "sexual offender." Because of this, Minix was required by statute to complete the sex offender treatment program before he could attain eligibility for parole.[6] In order to progress through the sex offender treatment program, individuals are required, *inter alia*, to admit guilt for the sexual offenses they committed. We further highlight that prior to the sentencing hearing, Minix was represented by attorney Luke Lawless (Lawless). But, on the morning of the sentencing hearing, attorney Scott Lanzon (Lanzon) also appeared to represent Minix as co-counsel alongside Lawless.

During the hearing, Lawless and Lanzon claimed that they had filed a written motion to withdraw Minix's guilty plea. The circuit court stated that the motion had not been filed and requested that the defense state its grounds on the record. Lawless argued:

> After looking at the PSI[7] and talking to Mr. Minix and to Mr. Lanzon, my client wants to try the case. He's not going to be able to make these admissions of guilt. And also, a part of this sex offender treatment that he would have to complete with this currently, he's not going to make these admissions so he's not going to complete it and he's not going to, he'll never complete the program or the requirements they're going to ask him to do to be

---

[6] KRS 197.045(4) ("A sexual offender who does not complete the sex offender treatment program for any reason shall serve his or her entire sentence without benefit of sentencing credit, parole, or other form of early release.").

[7] Pre-sentence investigation report.

6

parole eligible. It's never going to happen. So I think at this point in time the only option that we have is to try the case.

The Commonwealth had not received the motion and objected to it. The Commonwealth believed the motion to be "buyer's remorse" and argued that it had discussed all the terms of the agreement with Lawless at length. The Commonwealth also asserted that Lawless discussed parole eligibility and other details with Minix and his family so that everyone went into the plea agreement with "eyes wide open." It argued that Minix knew what he was doing when he entered the plea and that they should proceed with sentencing.

As the defense's written motion is not included in the certified record on appeal, and an order by the circuit court ruling on the motion is likewise absent, we must rely on the oral arguments made by the defense and the oral ruling of the circuit court. That exchange occurred as follows:

> **Court:** I'm reading through the [sex offender evaluation report] that was completed. Just going back to your argument Mr. Lawless, it says that the defendant stated he understands that his behavior was wrong and that he will enter into the sex offender treatment program to help him understand what motivated him to commit the sex offenses, he is amenable to treatment. So, explain to me again what your argument is.

> **Defense (Lawless):** Well, he is amenable to treatment, of course he would be willing to do whatever he needs to do to move forward. But as part of that treatment, the issue is going to be that, what they're going to ask him to do is to admit to things that he's not going to admit to doing because he maintains he didn't do those things. So that's the one part of it, not that he's not willing to do the treatment aspect of it, but to admit to doing things that he's saying he didn't do, they're not going to progress him through the treatment program. He's never going to be able to complete it because my understanding from, I've spent a lot of time on the phone trying to get some answers from some higher ups from probation and parole and from everybody that's with the sex offender treatment program, I've called several jail facilities trying

7

to get some more specific answers to these questions and that part maybe came in too late but this was also as a response to him asking me to do these things. He wanted more information and we found this out and it's like well, if he's not going to admit to these certain things that are contained in the PSI and certain allegations that are in the indictment then he's not going to be able to complete the treatment program. He's basically going to be stalled out on whatever phase number that it is because he's not going to admit.

**Court:** And again, it states in this report Mr. Minix has admitted to committing the sex crimes with which he is charged and to which he pled guilty and I'm not sure exactly what it is that he doesn't want to admit guilt to. But of course this court goes over a very

detailed questioning with each defendant when they enter a guilty plea and I asked him specifically 'are you pleading guilty because you are guilty?' and his answer was yes. . . . He was unequivocal, he didn't tell me, you know, I'm taking this because it's a good deal. . . . I think it's a stall tactic and I'm ready to proceed with sentencing.

**Defense (Lanzon):** I think the other issue is that it's not a one- or two-year sentence, it's a twenty-year sentence, it's a major sentence. He was incarcerated leading up to the plea, so the amount of pressure that was by his own admission, and him and I have gone through it as it relates to his colloquy with the court and I think upon reflection, I know the state has indicated it's buyer's remorse. Well, what was he admitting to under those circumstances is what he's having the questions about. And so I understand this court may view that as a stall tactic but we are looking at a twenty year sentence—

**Court:** Twenty-five.

**Defense (Lanzon):** Twenty-five. I mean that's a major, major life alteration.

**Court:** Sure. And there are major, major, major crimes that he committed, and told me that he did commit, against a child.

**Defense (Lanzon):** And so, as the state is well aware, there are many extenuating circumstances with this case, they've seen the text messages they've seen how this transpired over the internet, and so, what we're looking for is a trial date as quick as this court can accommodate it.

8

**Court:** He's been in jail for 627 days. He's had time to consider whether or not he is guilty, so when I ask him if he's pleading guilty because he's guilty, I take him at his word. 627 days he's had time to consider whether or not he committed these crimes and wants to admit to that. Mr. Lawless is a fine attorney; I'd recommend him to anyone. I'm not allowed to recommend attorneys but if I were he'd be on the top of my list. He's had competent counsel. I see no reason to not go forward with sentencing today.

**Defense (Lanzon):** You're honor what we're looking for—

**Court:** I heard what you're looking for. It's overruled.

The court then gave the defense time to go over the PSI with Minix. When the hearing reconvened, the court asked Lawless if he would like to make a statement on Minix's behalf. He stated:

I would just like to reiterate what we had put on the record when we came up the first time, judge. When I stood up here with Mr. Minix at the end of March when we entered this plea, I agree with [the Commonwealth's] statement that we had worked pretty hard on trying to get this deal put together, but there were certain aspects of it that came together at the very last minute, one of which, the main one, that came together at the last minute was parole eligibility and how that would work. And I specifically remember meeting with [Minix] in the holding cell that day trying to go through some of these last minute details on what this plea would mean because basically that was our deadline date, we had to make a decision right then and I thought at the time that when I was speaking of parole eligibility that his understanding of what that meant was greater than what it seems to be and that that's not an automatic at all; just because you're eligible does not mean that you're going to receive it and that was kind of what he was relying on in accepting this deal along the way. I understand that now. . . . So I just want to put that on the record that I don't feel like after speaking with [Minix] again and going through this paperwork with him I don't know that he realized exactly what that eligibility status meant and so I would reiterate that we would like to have a hearing on the motion to withdraw the plea. I understand that the court has already ruled on that, but I just want to put it on the record again that we're going to maintain that

9

we would like to withdraw the plea and move the case on for trial. That's my statement your honor.

The court then asked Minix if he would like to make a statement, but he declined. The Commonwealth responded that given the facts of the case, Minix's lack of a valid legal defense, and the sentence that Minix would otherwise be facing, it was a fair deal. It further pointed out that Minix had already admitted guilt of the crimes to both the court and the evaluator that compiled the sex offender evaluation report and that he told the evaluator that he committed the crimes and that he is amenable to treatment. Moreover, it argued that no one is guaranteed parole at any time and that parole would be dependent on many other factors in addition to his completion of the sex offender treatment program.

The circuit court, noting that it had reviewed the PSI and the sex offender evaluation report, imposed the sentence recommended by the Commonwealth and agreed to by Minix. Minix now appeals the circuit court's ruling to this Court.

Additional facts are discussed below as necessary.

## II.   ANALYSIS

### A. Substantial evidence supported the circuit court's finding that Minix's guilty plea was voluntary, and the court did not abuse its discretion by denying his motion to withdraw it.

Minix first argues before this Court that his guilty plea was involuntary because he did not know that he would be required to complete the sex offender treatment program to be eligible for parole and he did not know he would have to make admissions of guilt to complete the sex offender treatment

program.[8]  Relying on RCr[9] 8.10, *Rodriguez v. Commonwealth*,[10] and *Rigdon v. Commonwealth*,[11] Minix further argues that the circuit court reversibly erred by declining to hold an evidentiary hearing to determine whether his guilty plea was voluntary before denying his motion to withdraw his guilty plea.

The Commonwealth counters that under *Edmonds v. Commonwealth*,[12] parole eligibility is not considered a "direct consequence" of a guilty plea and, therefore, ignorance regarding parole eligibility cannot render a plea involuntary.  For this reason, and for additional reasons explained herein, we agree with the Commonwealth and affirm the circuit court's ruling.

As previously mentioned, Minix filed a pre-sentencing motion under RCr 8.10 to withdraw his guilty plea.

> [T]o be entitled to relief on that ground the movant must allege with particularity specific facts which, if true, would render the plea involuntary under the Fourteenth Amendment's Due Process Clause, would render the plea so tainted by counsel's ineffective assistance as to violate the Sixth Amendment, or would otherwise clearly render the plea invalid.  Motions which fail adequately to specify grounds for relief may be summarily denied, as may be motions asserting claims refuted or otherwise resolved by the record.[13]

---

[8] Minix's appellate brief also raises new arguments concerning his status as a brittle diabetic and poor living conditions in the Adair County Jail as contributing to the involuntariness of his plea.  These arguments were not raised before the circuit court as grounds to withdraw his guilty plea.  We will accordingly limit the arguments we address to those raised before the circuit court.

[9] Kentucky Rule of Criminal Procedure.

[10] 87 S.W.3d 8 (Ky. 2002).

[11] 144 S.W.3d 283 (Ky. App. 2004).

[12] 189 S.W.3d 558 (Ky. 2006).

[13] *Commonwealth v. Pridham,* 394 S.W.3d 867, 874 (Ky. 2012) (internal citations omitted).

Whether a plea was entered voluntarily is an inherently fact-intensive inquiry, and it is well-established that the trial court "is in the best position to determine the totality of the circumstances surrounding a guilty plea."[14] Accordingly, "[a] trial court's determination on whether [a] plea was voluntarily entered is reviewed under the clearly erroneous standard," i.e., whether the ruling was supported by substantial evidence.[15] "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men."[16] "If, however, the trial court determines that the guilty plea was entered voluntarily, then it may grant or deny the motion to withdraw the plea at its discretion. This decision is reviewed under the abuse of discretion standard."[17] A trial court's ruling is an abuse of discretion if the decision "was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[18]

Minix asserted to the circuit court that his plea was involuntary because he did not know that he was required to complete the sex offender treatment program to become eligible for parole and, in addition, that he did not know he would be required to make admissions of guilt to complete the sex offender

---

[14] *Rigdon,* 144 S.W.3d at 288 (citing *Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001)).

[15] *Rigdon,* 144 S.W.3d at 288.

[16] *See, e.g., Smyzer v. B.F. Goodrich Chem. Co.,* 474 S.W.2d 367 (Ky. 1971).

[17] *Rigdon,* 144 S.W.3d at 288.

[18] *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

treatment program.  A voluntary plea is one entered by a defendant that is

"fully aware of the **direct** consequences" of the guilty plea.[19]

> [T]he "direct" consequences of a guilty plea, those consequences of
> which the defendant must be aware for his plea to be deemed
> voluntary as a matter of due process, [are] understood as the
> waiver of the defendant's trial-related constitutional rights and the
> potential penalties to which he was subjecting himself by
> confessing or acquiescing to the state's charges and those to which
> he would be subjected if he lost at trial, i.e., those matters within
> the direct sentencing authority of the trial court.[20]

In contrast, "[m]atters outside the trial court's sentencing authority, [including]

parole eligibility . . . have been deemed 'indirect' or 'collateral' consequences of

the plea" that do not affect the validity of the plea.[21]

For example, in *Edmonds*, Todd Edmonds pled guilty to several charges,

some of which required him to be classified as a "violent offender" under KRS

439.3401.[22]  This meant that he would be required to serve 85% percent of his

sentence before becoming eligible for parole.[23]  The trial court accepted

Edmond's guilty plea after conducting a *Boykin* hearing.[24]  After the guilty plea

was accepted, but prior to sentencing, Edmonds moved to withdraw his guilty

plea.[25]  The trial court did not hold an evidentiary hearing on his motion;

---

[19] *Pridham*, 394 S.W.3d at 876 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)) (emphasis added).

[20] *Pridham*, 394 S.W.3d at 877.

[21] *Id.*

[22] *Edmonds*, 189 S.W.3d at 566-67.

[23] *Id.* at 567.

[24] *Id.* at 565-66.

[25] *Id.* at 566.

rather, "having already conducted the *Boykin* hearing when the plea was entered, [the court] denied the motion and simply referred to its previous *Boykin* colloquy in finding that [Edmond's] plea was voluntarily entered."[26]

On appeal, Edmonds asserted that his guilty plea was involuntary, in relevant part, because "he was misinformed by defense counsel regarding when he would be released from the penitentiary."[27] He claimed that his defense counsel sent him a letter prior to his plea colloquy which "assured him that he would be *released,* rather than merely eligible for parole, at the expiration of 85% of his sentence, and that he relied on this assurance in pleading guilty."[28]

This Court disagreed, noting that "[a] defendant's eligibility for parole is not a 'direct consequence' of a guilty plea the ignorance of which would render the plea involuntary."[29] The Court further discussed that any incorrect information Edmond's attorney may have provided him was remedied during his plea colloquy wherein his attorney and the trial court discussed his sentence and parole eligibility.[30] The court held that the trial court did not err by denying Edmond's motion to withdraw his guilty plea because there was

---

[26] *Id.*

[27] *Id.*

[28] *Id.* at 567.

[29] *Id. See also Stiger v. Commonwealth*, 381 S.W.3d 230, 235 (Ky. 2012) (holding that that the trial court's failure to advise the defendant that he would be ineligible for parole until he served 85% of his sentence did not render his plea involuntary because parole is not a direct consequence of a guilty plea).

[30] *Edmonds,* 189 S.W.3d at 567-68.

"substantial evidence to support the trial court's determination that the plea was voluntary and intelligent."[31]

It should also be noted that a similar outcome was reached by this Court in *Pridham, supra,* wherein defendant Jason Cox's counsel "not only failed to advise him of the potential parole consequences attaching to sex offender treatment but incorrectly assured him that the sex offense would not affect his parole eligibility."[32]  Upon learning that sex offender treatment was a prerequisite to parole eligibility, Cox filed a motion to withdraw his guilty plea which the trial court denied.[33]

On appeal to this Court, Cox argued that the U.S. Supreme Court's decision in *Padilla v. Kentucky,*[34] "utterly invalidated the distinction between the direct and collateral consequences of a guilty plea, and imposed on defense counsel a constitutional duty to offer accurate advice about any and all consequences that might bear on a reasonable defendant's plea decision."[35]  In *Padilla,* the U.S. Supreme Court rejected the collateral versus direct distinction as it related to the deportation consequences of a guilty plea and concluded that such a severe penalty should not be categorically removed from counsel's constitutional duty to advise by simply dubbing it a "collateral consequence."[36]

---

[31] *Id.* at 568.

[32] *Pridham,* 394 S.W.3d at 881.

[33] *Id.* at 874.

[34] 559 U.S. 356 (2010).

[35] *Pridham,* 394 S.W.3d at 881.

[36] *Padilla,* 559 U.S. at 366.

The *Pridham* Court rejected Cox's argument under *Padilla*. The Court explained, in relevant part:

> we understand *Padilla* as invalidating the collateral consequences rule for deportation and for consequences "like" deportation in their punitive effect, their severity, and their intimate relationship to the direct criminal penalties where the consequence is easily determined from a clear and explicit statute. The deferral of Cox's parole eligibility until he completes sex offender treatment is not like deportation in any of these respects.
>
> To begin with, sex offender treatment is not a punishment or a penalty. It is a rehabilitative measure the General Assembly has deemed important enough to make mandatory. As then-Judge, now Justice, Schroder observed for the Court of Appeals in *Garland v. Commonwealth*, 997 S.W.2d 487 (Ky. App. 1999), the fact that sex offender treatment has been made a condition precedent to parole does not affect a defendant's underlying sentence and does not enhance his punishment, even where the effect of the condition precedent is to delay his parole eligibility.[37]

The *Pridham* Court affirmed the circuit court's denial of Cox's motion to withdraw his guilty plea.[38]

Based on the foregoing, we disagree with Minix's contention that his misunderstanding of when he would be eligible for parole rendered his plea involuntary and hold that based on the totality of the circumstances, substantial evidence supported the circuit court's finding that his plea was voluntary. During his plea colloquy, the court discussed the direct consequences of his plea: the court discussed the trial-related constitutional rights Minix was waiving by entering a guilty plea, and he stated he understood

---

[37] *Pridham*, 394 S.W.3d at 881–82.

[38] *Id.* at 886.

16

those rights.[39]  In addition, the Commonwealth's offer on a plea of guilty, which was signed by both Minix and his counsel, clearly laid out "the potential penalties to which he was subjecting himself by confessing or acquiescing to the state's charges and those to which he would be subjected if he lost at trial[.]"[40]  Moreover, Minix unequivocally stated that he was pleading guilty because he was guilty; that he was satisfied with his counsel's services; that he had sufficient time to consult his counsel regarding the evidence, potential defenses, and the plea agreement itself; and that he had no questions for the court regarding the plea agreement.  The circuit court was also highly complementary of his counsel and felt that he had received adequate representation.

Minix next argues that the circuit court committed reversible error by refusing to conduct an evidentiary hearing before denying his motion to withdraw.  We disagree.  To begin, the plain language of RCr 8.10 imposes no such mandate.  That statute simply provides, in relevant part: "At any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted."[41]  And, while *Rodriguez* states that "**[g]enerally**, an evaluation of the circumstances supporting or refuting claims of coercion and ineffective assistance of counsel requires an inquiry into what transpired between attorney and client that led to

---

[39] *See Id.* at 877.

[40] *Id.*

[41] RCr 8.10.

17

the entry of the plea, i.e., an evidentiary hearing[,]"[42] there is no categorical requirement as Minix alleges. Decisions by both this Court and the Court of Appeals rendered after both *Rodriguez* and *Rigdon* have upheld a trial court's denial of a defendant's motion to withdraw a guilty plea even though the trial court did not conduct a separate evidentiary hearing on the motion, including *Edmonds, supra; Stiger v. Commonwealth, supra;*[43] *Williams v. Commonwealth*;[44] and *Elkins v. Commonwealth*.[45]

Indeed, even though the Court of Appeals in *Rigdon* reiterated that a separate evidentiary hearing is the preferred course, it stated in dicta that a failure to do so did not necessarily constitute reversible error. In *Rigdon*, Larry Rigdon pled guilty to two charges following a *Boykin* colloquy.[46] Prior to sentencing, Rigdon filed a *pro se* motion to withdraw his guilty plea on the ground that it was involuntary due to ineffective assistance of counsel; Rigdon alleged that his attorney had failed to communicate with him, refused to properly investigate, and did not advise him of the options to file a motion in limine to exclude certain evidence or to enter a conditional guilty plea.[47] "No separate evidentiary hearing was conducted. However, at the. . . sentencing

---

[42] 87 S.W3d at 11 (emphasis added).

[43] To be clear, even though Stiger's motion was a post-conviction RCr 11.42 claim, the standard for relief is the same as a motion filed under RCr 8.10. *See Pridham*, 394 S.W.3d 867 at 874.

[44] 233 S.W.3d 206, 210 (Ky. App. 2007).

[45] 154 S.W.3d 298, 299 (Ky. App. 2004).

[46] 144 S.W.3d at 285-86.

[47] *Id.* at 286.

18

hearing, Rigdon was given the opportunity before sentencing to explain to the circuit court why he should be permitted to withdraw his plea and how he had suffered from ineffective assistance of counsel."[48] The circuit court summarily denied his motion to withdraw, finding that his plea was entered intelligently and voluntarily.[49]

The Court of Appeals upheld the denial and, regarding the lack of separate evidentiary hearing, noted:

> In the instant case, no evidentiary hearing was conducted. Rigdon and his attorney were both given the opportunity to speak about the allegations Rigdon raised in his motion to withdraw his guilty plea at the sentencing hearing, although neither was placed under oath or subjected to cross-examination. Notably, Rigdon has not alleged that this informal hearing was procedurally inadequate or prejudiced him in anyway. Therefore, this matter is not before the Court. We observe that even if it were before us, we would find that this informal hearing conducted was sufficient under these circumstances for the circuit court to determine the totality of
>
> circumstances surrounding Rigdon's guilty plea. Nevertheless, conducting an evidentiary hearing would have been the more prudent course since *Rodriguez* indicates that such a hearing is generally necessary.[50]

Furthermore, more recent case law has refined the standard for a separate evidentiary hearing by stating that "[m]otions adequately alleging valid claims not refuted by the record entitle the movant to an evidentiary hearing,"[51] but "[m]otions which fail adequately to specify grounds for relief may be summarily

---

[48] *Id.*

[49] *Id.* at 287.

[50] *Id.* at 290.

[51] *Pridham*, 394 S.W.3d at 877 (citing *Rodriguez, supra*).

19

denied, as may be motions asserting claims refuted or otherwise resolved by the record."[52]

Here, as discussed, Minix alleged that his plea was involuntary because of his misunderstanding regarding when and how he would attain parole eligibility. But, as parole eligibility is a collateral consequence of a guilty plea, it could not have affected the voluntariness of his plea. His motion therefore did not allege a valid claim of involuntariness and the circuit court did not abuse its discretion in summarily denying it.

## B. Minix's Eighth Amendment argument is not properly before this Court.

Minix also argues that the Adair County Jail violated his rights under the Eighth Amendment of the U.S. Constitution against cruel and unusual punishment due to what he alleges were poor living conditions. As the Commonwealth correctly argues in response, a conditions of confinement claim under the Eighth Amendment must be brought in a separate civil action.[53] Moreover, KRS 454.415(1)(d) directs that "No [civil] action shall be brought by or on behalf of an inmate, with respect to . . . A conditions-of-confinement issue[] until administrative remedies as set forth in the policies and procedures of the Department of Corrections, county jail, or other local or regional correctional facility are exhausted." This issue is therefore not properly before us, and we decline to address it.

---

[52] *Pridham*, 394 S.W.3d at 877 (citing *Edmonds*, 189 S.W.3d at 569).

[53] *Martin v. Commonwealth*, 639 S.W.3d 433, 437 (Ky. App. 2022).

### III. CONCLUSION

Based on the foregoing, substantial evidence supported the Adair Circuit Court's finding that Minix's guilty plea was voluntarily entered and did not abuse its discretion by denying Minix's motion to withdraw his guilty plea without first holding an evidentiary hearing. We accordingly affirm.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Scott Lanzon
Hindman & Lanzon

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Matthew Robert Krygiel
Assistant Attorney General

21